# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 2:10-cr-00066

HEYWOOD SMITH IV,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Heywood Smith IV's Motion to Suppress Evidence [Docket 28] and Motion to Dismiss Count 2 of the Indictment [Docket 24]. For the reasons set forth below, both motions are **DENIED**.[1]

### I. BACKGROUND

On April 13, 2010, the grand jury returned a two-count indictment against Defendant Heywood Smith IV, charging him with possessing a firearm after a misdemeanor domestic violence conviction, in violation of 18 U.S.C. § 922(g)(9). (Docket 2 at 1.) Count One alleges Defendant knowingly possessed a Ruger 9 millimeter pistol in and affecting interstate commerce on March 24, 2009. Count Two alleges Defendant knowingly possessed a Smith and Wesson .40 caliber pistol in and affecting commerce on July 2, 2009. In his pending motions, Defendant contends that the

---

[1] Defendant's Motion to Continue Trial is also **DENIED**. The motion was filed September 20, 2010, and the stated reason for the continuance was the pendency of the Defendant's suppression motion. As that motion is resolved by this opinion, the Motion to Continue is unnecessary.

traffic stop giving rise to Count Two was improperly conducted, and consequently, the firearm evidence must be suppressed and Count Two dismissed.

Count Two of the indictment originates from a traffic stop initiated at 2:02 a.m. on July 2, 2009. After pacing Defendant's car for several blocks and determining that Defendant exceeded the posted speed limit, two Charleston Police Officers initiated a traffic stop. As Defendant pulled his car off the road, Officers Hunt and Rogers observed Defendant lean to his right and extend his right arm toward the passenger side of the vehicle. From this observation and based on their field experience, the officers suspected Defendant had removed something from his person and placed it somewhere on the passenger side of the car. (Docket 29-1 at 1.) The officers noted in their narratives and testimony that Defendant was clearly nervous, was breathing heavily and swallowing hard, and would not make eye contact with either officer, instead looking straight ahead at almost all times. Proceeding routinely, the officers requested Defendant's license, registration, and insurance information. Defendant produced a valid West Virginia driver's license, but without making any effort to locate the vehicle registration or insurance information, Defendant told the officers he did not have those items with him. After explaining the importance of verifying that the vehicle was properly registered and insured, the officers urged Defendant to look for the documents. In particular, the officers suggested that Defendant search the glove compartment, stating that many motorists keep vehicle registration and insurance information there. According to the officers, after this suggestion, Defendant became even more nervous. Alarmed by Defendant's behavior, the officers asked Defendant whether any guns or illegal drugs were present in the car. Defendant denied the presence of either, but he refused to consent to a search of his vehicle. (Docket 29-1 at 1-2.)

Based on their observations up to that point, the officers requested a canine unit to inspect Defendant's car. The canine unit arrived approximately five minutes later and alerted on the outside driver's side of Defendant's car. Based on that alert, the officers searched the interior of Defendant's vehicle and recovered a .40 caliber Smith and Wesson pistol and a large knife from the car's glove compartment. Defendant was issued a warning citation for the vehicle violations and charged with carrying a concealed deadly weapon and being a prohibited person in possession of a firearm, both misdemeanors under West Virginia law.

Defendant filed the instant motions on May 14, 2010, arguing that the traffic stop amounted to an unlawful seizure in violation of the Fourth Amendment. Defendant contends that the traffic stop exceeded its lawful duration and that the officers had no reasonable, articulable suspicion that criminal activity was afoot to detain him beyond the initial traffic stop. Furthermore, Defendant contends that the officers did not have probable cause to search his vehicle, arguing that the canine alert is insufficient evidence of such probable cause.

## II. DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief and limited purpose, constitutes a seizure of a person within the meaning of the Fourth Amendment." *United States v. Brugal*, 209 F.3d 353, 356 (4th Cir. 2000) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of a road side seizure "must strike a balance between

the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

The Fourth Circuit defined the proper scope of a routine traffic stop in *United States v. Rusher*, explaining that "an officer may request a driver's license and vehicle registration, run a computer check and issue a citation." 966 F.2d 868, 878 (4th Cir. 1992). However, once "the driver has produced a valid license and proof that he is entitled to operate the vehicle he must be allowed to proceed on his way . . . ." *Id.* at 876. A seizure "justified solely on the basis of issuing a citation can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinios v. Caballes*, 543 U.S. 405, 407 (2005). Thus, once the traffic stop is complete, any continued detention of the driver violates the Fourth Amendment unless the officer develops a reasonable, articulable suspicion of a serious crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004).

The concept of reasonable suspicion is "a commonsensical proposition" and district courts "are not remiss in crediting the practical experiences of officers who observe, on a daily basis, what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The standard of reasonable suspicion does, however, require "a minimum level of objective justification for the police action." *Brugal*, 209 F.3d at 359 (quoting *Wardlow*, 528 U.S. at 123). It demands more than an officer's "inchoate and unparticularized suspicion" or "hunch that criminal activity is afoot." *Brugal*, 209 F.3d at 359 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). In the context of a routine traffic stop, the "articulated factors together must serve to eliminate a substantial portion

of innocent travelers before the requirement of reasonable suspicion will be satisfied." *Foreman*, 369 F.3d at 781. However, "[t]he Supreme Court has recognized that factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion." *Brugal*, 209 F.3d at 359 (citing *United States v. Sokolow*, 490 U.S. 1, 9 (1989)). Simply put, an officer is not required to eliminate the possibility of innocent conduct for the seizure to pass constitutional muster. *United States v. Arvizu*, 534 U.S. 266, 277 (2002) (citing *Wardlow*, 528 U.S. at 125).

It is proper for the Court to consider the officers' observations, based on their practical experience, in its Fourth Amendment analysis. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street."). Here, the officers' suspicions were immediately piqued by Defendant's movements immediately after pulling his vehicle over. At the pretrial hearing, Officer Hunt stated that, in his experience, Defendant leaning across the passenger side of the vehicle is consistent with concealing a weapon, drugs, or other contraband, or retrieving the same. When the officers approached the car, their suspicions were amplified by Defendant's extreme nervousness. Officer Hunt stated that Defendant made no attempt at eye contact with either Officer Rogers or Officer Hunt, and Defendant exhibited signs of extreme nervousness, such as sweating and hard swallowing. Officer Hunt stated that, in the over 400 traffic stops he has conducted, this stop was the first in which the driver never once made eye contact with the officers. Such physical signs of nervousness and evasive behavior are a pertinent factor in determining reasonable suspicion. *See Wardlow*, 528 U.S. at 124; *Sokolow*, 490 U.S. at 8-9; *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984); *Brignoni-Ponce*, 422 U.S. at 885. Although Defendant's sweating and averted eyes are insufficient to establish reasonable suspicion by themselves, that his emotional response was readily observable

5

to the officers cannot be overlooked. *See Forman*, 369 F.3d at 785 (shaking hands indicative of nervousness and a pertinent factor in reasonable suspicion determination).

Defendant also refused the officers' suggestion to search for his vehicle registration and insurance information. Officer Hunt stated that Defendant made no effort to locate either his registration or proof of insurance, despite the officers explaining the importance of those documents. Rather than attempt to avoid a traffic citation by locating those documents, Defendant remained still and his gaze remained straight ahead. When asked again to locate the registration and insurance information, this time with the suggestion that he look in the vehicle's glove compartment, Defendant's nervousness visibly escalated. These behaviors gave rise to increased suspicion by the officers, who now suspected that illegal drugs or a firearm was in the car's glove compartment.

Under the totality of these circumstances, it was reasonable for the officers to suspect that Defendant was in possession of illegal drugs or a firearm. *Wardlow*, 528 U.S. at 125 (determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior). Defendant's reaction and the other circumstances cited herein justified a lengthier stop. It was reasonable to detain Defendant long enough for the canine unit to arrive and confirm or deny the officers' suspicions. Moreover, the officers had reasonable suspicion relatively early in this traffic stop. According to police records, the canine unit arrived on the scene five minutes after the traffic stop was initiated. Given the totality of the circumstances, the length of the stop was not unreasonable. The stop prior to the canine search was devoted to obtaining documents that are part of a routine traffic stop, checking Defendant's license, and ensuring Defendant had no outstanding warrants. It was while Officer Rogers was checking Defendant's license and outstanding warrants that the canine unit arrived.

Once the canine unit alerted on Defendant's vehicle, the officers had probable cause to search the entire car. *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994); *see also United States v. Newland*, 246 F. App'x 180, 190 (4th Cir. 2007) (unpublished). It is well settled in this circuit and others that a "positive alert" from a drug detection dog, in and of itself, provides probable cause to search a vehicle. *See United States v. Branch*, 537 F.3d 328, 340 n.2 (4th Cir. 2008) (citing *Jeffus*, 22 F.3d at 557; *United States v. Eura*, 440 F.3d 625, 630 (4th Cir. 2006), *vacated on other grounds*, 552 U.S. 1090 (2008)). It is of no moment that the detection dog alerted on the exterior of Defendant's driver door. Once the dog alerted, the officers had probable cause to search the entire interior of the vehicle, including the glove compartment. *See California v. Acevendo*, 500 U.S. 565, 574-81 (1991) (holding that glove compartment search, if probable cause is shown, falls within the automobile search exception to the Fourth Amendment's warrant requirement); *United States v. Ross*, 456 U.S. 798, 823-24 (1982) ("[I]f probable cause justifies a search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Seals*, 987 F.2d 1102, 1106-07 (5th Cir. 1993) (dog alert gave rise to probable cause to search the passenger compartment, which yielded a glass pipe from the vehicle's glove compartment). Furthermore, the "positive alert" was not the only evidence upon which the officers gained probable cause to search the vehicle. Defendant's extraordinarily nervous behavior, refusal to search for requested documents, and suspicious movements provide additional foundation to establish probable cause for the search.

### *III. CONCLUSION*

For the reasons set forth above, Defendant's Motion to Suppress Evidence and his Motion to Dismiss Count 2 of the Indictment are **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: September 21, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE